## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

No. 5:13-CV-473-FL

| | |
|---|---|
| MICHAEL S. COOPER, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-28, DE-31] pursuant to Fed. R. Civ. P. 12(c). Claimant Michael S. Cooper ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on January 8, 2008, alleging disability beginning March 30, 2007. (R. 46, 134-48, 546). Claimant had filed a previous application that was denied on October 15, 2007. (R. 60-65). In the instant application, both claims were denied initially and upon reconsideration. (R. 39-42, 66-75). A hearing before

Administrative Law Judge Michelle Cavadi ("ALJ Cavadi") was held on April 9, 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 10-38). On July 29, 2010, ALJ Cavadi issued a decision denying Claimant's request for benefits. (R. 43-59). On July 6, 2011, the Appeals Council denied Claimant's request for review. (R. 1-7). Claimant then filed a complaint in this court seeking review of the final administrative decision.

On February 26, 2012, United States District Judge Terrance W. Boyle granted defendant's motion for Remand to the Commissioner. (R. 606). The Court reversed the Commissioner's decision under sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3) and remanded the case to the Commissioner for further proceedings including a new hearing. (R. 606). On October 25, 2012, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 610-14). The Claimant filed subsequent claims for DIB and SSI on December 22, 2010, and the Appeals Council directed the ALJ to associate the claim files and issue a new decision on the associated claims. (R. 613). A second administrative hearing before ALJ Richard Perlowski ("ALJ") was held on December 17, 2012, at which Claimant was represented by counsel and a VE appeared and testified. (R. 566-97). On April 4, 2013, the ALJ issued a decision denying Claimant's claims. (R. 543-65). Claimant then commenced the instant action, seeking judicial review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th

2

Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the

3

first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give proper weight to a treating physician's medical opinion; and (2) improper assessment of Claimant's residual functional capacity ("RFC"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-29] at 3.

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. (R. 549-59). At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 549). Next, the ALJ determined Claimant had the following severe impairments: degenerative joint disease of the elbow, depression, and alcohol abuse. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20

4

C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in his activities of daily living, moderate difficulties in social functioning and moderate difficulties in concentration, persistence and pace with no episodes of decompensation. (R. 549-50).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring no exposure to excessive noise or vibration. (R. 551). The ALJ found that Claimant's ability to perform light work is subject to the following physical limitations: use of his right upper extremity on an occasional basis and only as a "helper," and only occasional climbing or balancing. *Id.* The ALJ also identified the following non-exertional limitations: Claimant is limited to simple, routine, repetitive tasks in a non-production work environment with only occasional interaction with others. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 552-55).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a tractor trailer truck driver, delivery route truck driver, carpenter, and product assembler. (R. 557). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 558-

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

59).

**B.    Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was 43 years old, unemployed, and living with his mother. (R. 570-71). Claimant attained an 11th grade education and completed truck driver's school. (R. 571). Claimant was last employed with Strickland Trucking Company for approximately three years, where his duties included delivering and unloading bricks. (R. 572). Claimant's past work experience also includes other truck driving positions, a position in product assembly as a wire cutter, and a position as a carpenter installing flooring. (R. 572-75). Claimant explained numerous medical conditions supporting his disability claim and his inability to work full-time. These medical conditions include some loss of hearing in Claimant's left ear, nerve damage, pain, and numbness in his right arm, dizziness and lightheadedness, high blood pressure, headaches, depression, and difficulty concentrating. (R. 577-89). A hearing examination revealed loss of hearing in Claimant's left ear, but Claimant does not wear a hearing aid. (R. 577). Claimant has been taking Zoloft and Oxycodone since his accident in 2007, and they cause drowsiness during the day. *Id.* Because of this daytime drowsiness, Claimant has trouble sleeping at night. (R. 582).

Claimant is ambidextrous, but has not been able to use his right hand and arm since the accident. (R. 578). Claimant describes the pain in his right hand as a constant problem and as "steady numbness." (R. 582). Painkillers help manage the pain but are unable to alleviate it completely. *Id.* In addition to the Oxycodone, Claimant takes over-the-counter pain medicines to manage the pain in his right hand. *Id.* Claimant is unable to fully extend his right arm. (R. 585). Claimant is able to raise his right hand slightly, but cannot keep it elevated long enough to brush his teeth. (R. 586). Claimant considered additional surgery on his right arm, but decided not to pursue

6

the surgery after being informed that while he might be able to fully extend his arm after the surgery, he could lose the use of his right hand entirely. *Id.*

Claimant has to use his left hand for all tasks, and can lift 30 pounds at the most without causing additional problems. (R. 584). Because Claimant can only use his left hand, he is starting to have problems with that hand as well. (R. 579). Claimant is unable to perform any chores around the house, but does go occasionally to the store with his mother. (R. 584). Claimant still has both his driver's license and his Commercial Driver's License, and on average drives once or twice a week. (R. 570). Generally, Claimant rides with his mother if he has to go anywhere–for example, to doctor's visits and to pick up his daughters from school. (R. 589). Since the accident, Claimant has made one out-of-state visit, for two days, to attend a family wedding in Maryland. (R. 584-85).

Claimant suffers from dizzy spells when he is seated for prolonged periods and then stands. (R. 580). Claimant also experiences dizziness when he changes directions while walking. *Id.* If Claimant tries to walk too far, he gets dizzy and loses his balance. (R. 583). Sometimes the dizziness is severe enough that Claimant becomes nauseated. *Id.* Claimant does not use a cane when he walks, and generally avoids activities where he would be out alone. *Id.* Claimant is able to walk or stand for ten minutes at a time before he needs to sit down. *Id.* Claimant also cannot sit for more than 30 to 45 minutes without experiencing dizzy spells or back pain. *Id.* The dizziness prevents Claimant from bending or stooping, so he has to rest his foot in a chair in order to tie his shoes. (R. 586). Claimant has been taking Meclizine for his dizziness since 2007, but does not notice much of an effect unless the prescription runs out and his problems worsen. (R. 580).

Claimant experiences frequent headaches, at least 10 to 15 times per month. (R. 587). In addition to prescribed medicine for his headaches, Claimant takes over-the-counter medication in

7

order to control the pain when he feels a headache is beginning. *Id.* During a headache, Claimant is sensitive to light and noise. *Id.* Claimant cannot lie down during a headache, and he generally has to remain sitting until the headache is gone. (R. 587-88). Depending on how quickly Claimant is able to take his medication when he feels a headache beginning, his headaches can last from an hour or two to half of the day. (R. 588).

Claimant is experiencing depression because he is unable to work and to provide for his two daughters. (R. 581). This depression makes it difficult for Claimant to be around others. (R. 588). Claimant feels like he is at a "standstill" and that he does not have control over what is happening in his life. *Id.* This depression also affects Claimant's concentration, and due to all of his medical problems, he finds it hard to focus. (R. 588-89). Claimant has to rely on his mother to go anywhere and is scared to try and do things on his own. (R. 589).

## C.    Vocational Expert's Testimony at the Administrative Hearing

Theodore Sawyer testified as a VE at the administrative hearing before ALJ Perlowski. (R. 589-96). After the VE's testimony regarding Claimant's past work experience (R. 590-91), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed the following hypothetical question:

> [A]ssume this individual can engage in light work but has no use of the non-dominant right upper extremity; so can't use it for grasping, handling, fingering, et cetera; pushing, pulling, whatever, but can only occasionally climb or balance; needs to avoid excessive noise or vibration; would be further limited to simple, routine, repetitive type tasks; would need to avoid production work or similar stressful work, like piecework or something, and also needs a job where there's only occasional interaction with others. With those limitations, could you suggest any jobs that hypothetical individual could perform?

(R. 591). The VE asked for clarification of the use of the right non-dominant upper extremity, and

8

the ALJ responded that any lifting was limited to five pounds, there was "no fingering, handling, repetitive use of the hands[,]" and that use of the right hand was limited as a helper and only on an occasional basis. (R. 592). The VE first noted that the Dictionary of Occupational Titles ("DOT") "is not specific in its breakdown regarding the bi-manual specifics of reaching and handling activity" and that he was responding based on his experience as a rehabilitation counselor working with people who had similar injuries and disabilities. (R. 592-93). The VE then stated that such a hypothetical individual could work as a parking lot attendant (DOT # 915.463-010), a counter clerk (DOT # 249.366-010), or a cashier II (DOT # 211.462-010), all of which are light exertion positions. (R.593). The ALJ asked about the level of contact with others in those positions, and the VE responded that they would involve extensive interpersonal contact. *Id.* The ALJ then asked about positions the hypothetical individual could perform that would involve only occasional interaction with others. (R. 594). The VE responded that such an individual could work as a garment sorter (DOT # 223.687-014), an X-ray inspector (DOT # 529.685-274), or a remnant sorter (DOT # 789.687-146).

The ALJ then posed the following additional limitation to the hypothetical individual:

[A]ssume the individual additionally has all the limitations described here today by Mr. Cooper, especially his testimony about his limited ability to walk, and stand, and sit as was described, but also as to his testimony as to a significant dizziness and the frequency and severity of his headaches as he described such that [INAUDIBLE] to work - when experiencing headaches twice a week. Could that individual engage in any work [INAUDIBLE] on a full time competitive basis?

(R. 595). The VE responded in the negative. *Id.* In response to a question from counsel for Claimant, the VE clarified that an x-ray inspector position is light, unskilled work in the food processing industry where the inspector monitors packaged foods for foreign objects as they are

9

scanned by x-ray machines. (R. 596). The position does entail some grasping or reaching if the x-ray reveals an object inside the package, but the VE opined that an individual typically would be able to open the packages with one hand. *Id.*

## V. DISCUSSION

### A. The ALJ's Assessment of the Medical Opinion Evidence

Claimant contends the ALJ erred by failing to give controlling weight to the opinion of Dr. Brinn, Claimant's treating physician. Pl.'s Mem. at 11-12. The Commissioner counters that the ALJ properly gave limited weight to Dr. Brinn's opinion because it was inconsistent with Claimant's medical records and other substantial evidence of record. Def.'s Mem. Supp. Def.'s Mot. J. Pleadings ("Def.'s Mem.") [DE-32] at 24-29. The undersigned agrees with the Commissioner that the ALJ adequately explained the weight given to Dr. Brinn's opinion and his decision is supported by substantial evidence.

The ALJ must weigh and evaluate all medical opinions received, regardless of the source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions of treating sources are given greater weight than opinions of non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of the treating source is usually afforded more weight because the treating source is able to provide a "detailed, longitudinal picture" of the Claimant's alleged disability. *Id.* While a treating source's opinion is generally afforded "great weight," the ALJ is not required to afford it "controlling weight." *Craig*, 76 F.3d at 589-90. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.* at 590. If the ALJ determines that a treating source's opinion should not be afforded controlling weight, the ALJ must then consider all medical

10

opinions in the record, taking into account the following non-exclusive factors: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527); *see Baughman v. Colvin*, No. 5:13-CV-143-FL, 2014 WL 3345030, at *5-6 (E.D.N.C. July 8, 2014) (adopting memorandum and recommendation finding the ALJ properly weighed all medical opinion evidence in the record and did not afford controlling weight to the treating physician's opinion when it was inconsistent with the claimant's medical record).

Here, the ALJ discussed three opinions provided by Dr. Brinn, Claimant's treating physician: (1) a statement from May 13, 2009 (R. 532); (2) a Medical Source Statement from September 10, 2010 (R. 724-27); and (3) a statement from March 14, 2012 (R. 856). The 2012 statement opined that Claimant's health problems prevented him from working. *Id.* The ALJ noted that

Dr. Brinn's opinions were given little weight. The evidence showed the claimant's main limitation was his . . . right arm pain. Thus, he was unable to do his previous job but he was not precluded from all work as he was able to use his left hand as efficiently as he used his right. Dr. Brinn's objective notes showed the claimant was limited in his right arm use but did not support his allegation of disability.

(R. 556). The ALJ also considered the opinions of four other doctors aside from Dr. Brinn as to Claimant's physical limitations, and explained the weight given those respective opinions.

First, the ALJ explained that the opinion of Dr. Val Sokolev that Claimant could do medium level work was "given no weight as the objective evidence showed the claimant was more physically limited." (R. 362-69, 555). Second, the ALJ explained that the opinion of Dr. Robert Pyle that Claimant was able to do light work with few restrictions on the upper right extremity was afforded

11

"some weight, but the evidence and subjective complaints showed the claimant was more limited in the use of his right upper extremity." (R. 394-401, 556). Third, the ALJ explained that the opinion of Dr. Deanna Boyette – that it would be very difficult for the claimant to safely perform his past work – was "given great weight as the undersigned agrees [the Claimant's] right hand pain precludes his past work." (R. 313, 556).

Finally, the ALJ considered the opinion of Dr. Bissram, who opined that:

[T]he claimant had difficulty with heavy grasping manipulation of small objects with the right upper extremity but he had normal function of the left upper extremity. Dr. Bissram said the claimant was able to continuously lift 10 pounds and 20 pounds occasionally, but only five pounds with the right hand. In an eight-hour day, the claimant was able to sit, stand, and walk eight hours each. He was able to continuous reaching, handling, fingering, feeling, and pushing and pulling with the left hand. The claimant had numbness and weakness of the right hand and fingers, and he was never able to do any reaching overhead, and other reaching on a frequent basis, and occasional handling, fingering, feeling, pushing/pulling with the right hand. . . . This opinion was given the greatest weight as it was the most consistent with the medical evidence of record.

(R. 533-42, 557).

The ALJ appropriately weighed Dr. Brinn's opinions and sufficiently explained why he did not assign them controlling weight. Dr. Brinn's final opinion, from 2012, stated that Claimant's medical problems prevented him from working. (R. 856). Claimant is correct that Dr. Brinn's Medical Source Statement from 2010 shows that Claimant has significant restrictions on the use of his right hand. (R. 726-27). Dr. Brinn also notes in the Medical Source Statement, however, that Claimant is not restricted in the use of his left hand–that he is capable of constantly reaching, handling, and fingering with his left hand. *Id.* The ALJ has discretion to assign less weight to Dr. Brinn's opinion where his treatment notes did not support the suggested degree of limitation. *See Jones v. Colvin*, No. 5:12-CV-00567-FL, 2013 WL 5460197, at *12 (E.D.N.C. Sept. 30, 2013)

12

(adopting memorandum and recommendation finding the ALJ did not err in assigning "little weight" to a medical opinion where the doctor's own treatment notes did not support his suggested degree of limitation). Additionally, Dr. Bissram's opinion describes Claimant's ability to use his left hand and arm–he discusses how Claimant has been using both hands since the accident, and how Claimant has normal range of motion in his left shoulder and elbow. (R. 534). The ALJ notes that the record evidence about Claimant's ability to use his left upper extremity is inconsistent with Dr. Brinn's opinion in 2012 that Claimant's "ongoing chronic medical issues" (R. 856) prevent Claimant from working altogether. (R. 556)

The court's responsibility is to determine whether substantial evidence supports the ALJ's conclusion, not to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Here, the ALJ determined that Dr. Brinn's opinions were not entitled to controlling weight because they were not supported by the medical records and were inconsistent with other substantial evidence in the record, even though Dr. Brinn was Claimant's treating physician. (R. 556). The ALJ properly considered all medical opinions in the record and explained the weight afforded to each of them, as he was required to do. Thus, the undersigned finds that the ALJ's assessment of the medical opinion evidence, including his decision not to afford controlling weight to the opinion of Claimant's treating physician, was in accordance with the law and supported by substantial evidence. Accordingly, Claimant's argument on this issue is without merit.

## B. The ALJ's Assessment of Claimant's RFC

Claimant contends that the ALJ's finding that Claimant had the RFC to perform light work is not supported by substantial evidence, and that the ALJ erred by discrediting Claimant's subjective

13

complaints of pain. Pl.'s Mem. at 13-16. The Commissioner counters that the ALJ properly considered Claimant's credibility and substantial evidence supports the Commissioner's determination that Claimant is not disabled. Def.'s Mem. at 13-24. The undersigned finds no error in the ALJ's credibility assessment and related RFC determination.

### i. The ALJ's Determination of RFC

An individual's RFC is the capacity which the individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ's determination of RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

In support of his argument that he is disabled, Claimant relies on his own hearing testimony

14

as to his pain, dizziness, headaches, and depression to show that the ALJ's decision is not supported by substantial evidence. Pl.'s Mem. at 14-16. In making the determination as to Claimant's RFC, the ALJ considered Claimant's testimony (R. 555), all hospital and clinical treatment records from the relevant period (R. 552), and medical opinion evidence as to Claimant's physical and mental impairments (R. 552-57). These records indicated that Claimant was primarily controlling his pain without the help of prescription pain medication and that his pain was "well-controlled" (R. 433, 437, 441); that Claimant was not taking his prescribed pain medication (R. 794); that Claimant's depression was "unchanged" but that he was only taking his prescribed Zoloft about 25 percent of the time (R. 441); that Claimant's headaches had improved (R. 442); that Claimant was experiencing headaches approximately once per month (R. 445); that Claimant had discontinued physical therapy for his right arm (R. 448-49); and that Claimant had full range of motion in his left elbow and shoulder (R. 534-35). Additionally, medical opinion evidence showed that Claimant was capable of sitting, standing, and walking for eight hours at a time. (R. 538). It is within the ALJ's discretion to conclude that the medical records, which evidenced that Claimant was not limited in the use of his left upper extremity and that Claimant's pain in his right upper extremity was well-controlled, did not support the limitations to the extent alleged by Claimant. (R. 433, 534-35); *see Parris v. Heckler*, 733 F.2d 324, 327 (4th Cir. 1984) ("[S]ubjective evidence of pain cannot take precedence over objective medical evidence or lack thereof.") (citation omitted).

Moreover, Claimant's contention that the ALJ erred by discrediting Mr. Cooper's subjective complaints of pain, Pl.'s Mem. at 14, misstates the applicable standard. *Craig*, 76 F.3d at 589. The correct inquiry is whether the Commissioner's ruling is supported by substantial evidence. *Id.* It is insufficient for a claimant to "point to other evidence in the record that supports her claimed

15

impairments" and argue that the ALJ's decision is unfounded. *Frazier v. Astrue*, No. 4:06-CV-254-FL, 2008 WL 138050 at *14 (E.D.N.C. Jan. 10, 2008). Were that the case, the reviewing court would be re-weighing the evidence and substituting its own conclusions for those of the Commissioner, thereby overstepping the bounds of its limited scope of review. *Hays*, 907 F.2d at 1456.

Ultimately, the ALJ has discretion to conclude that the objective medical evidence suggesting an ability to work outweighs Claimant's subjective complaints of disabling pain. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting the ALJ is not required to accept Claimant's subjective evidence to the extent that it is inconsistent with the objective record evidence) (quoting *Craig*, 76 F.3d at 595); *Parris*, 733 F.2d at 327 (same) (citation omitted). Here, Claimant testified that the pain in his right upper extremity, along with his headaches, depression, and dizziness, prevented him from working. (R. 570-89). The ALJ concluded that the objective medical records show that Claimant's right arm pain was not as severe as he claimed, and that his other problems were relatively well-controlled by medication. Those objective medical records do not demonstrate an inability to work, and the ALJ had discretion to assign them greater weight than Claimant's contradictory testimony.

In the instant case, the ALJ's determination that Claimant had the RFC to perform light work with the use of the right hand only as a helper is supported by substantial evidence. The ALJ analyzed the entire record, sufficiently explained his findings, and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument on this issue is without merit.

## ii. The ALJ's Assessment of Claimant's Credibility

At step four of the sequential evaluation process, the ALJ must apply a two-step credibility

16

analysis to determine whether a claimant's subjective complaints of pain conform to the objective medical evidence. *Craig*, 76 F.3d at 593-96; 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. SSR 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564. If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. SSR 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." SSR 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value–he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96-7p, 1996 WL 374186, at *3; *see also Taylor v. Astrue*, No. 5:10-CV-263, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (memorandum and recommendation finding the ALJ properly considered the entire case record to determine that Claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Here, the ALJ found that Claimant had medically determinable impairments reasonably capable of causing some of the alleged symptoms, but concluded that Claimant's statements

17

concerning the intensity, persistence, and limiting effects of those symptoms were not credible. (R. 552). In support of this conclusion, the ALJ noted that Claimant's allegations of right upper extremity pain and depression were not supported by the objective medical evidence, i.e., Claimant controlled his pain with over-the-counter medication; Claimant was able to engage in daily personal care activities and occasionally drove himself places; and Claimant had mild depression that was controlled by medication when he was taking it as prescribed. (R. 555). The ALJ also noted that Dr. Bachara, a clinical psychologist, evaluated Claimant twice, and on the second examination, Claimant presented himself very unfavorably as to credibility. *Id.*

First, with respect to the ALJ's statement that Claimant controlled his upper right extremity pain with over-the-counter medication, Claimant testified that the pain was a "constant problem," one that his prescription medicines helped with but could not manage entirely. (R. 582). However, the evidence does not support a finding that the Claimant's pain was as severe as claimed. The record reflects that Claimant was not taking his prescribed medications as directed, was not using his entire prescribed amount of prescription painkillers, and was controlling his pain primarily through the use of over-the-counter medication. (R. 437, 441, 794).

Next, the ALJ noted that Claimant was able to engage in daily personal care activities and occasionally drove by himself. The ALJ stated that

> claimant was still able to feed and dress himself, walk, stand, sit, walk, button his clothes, bathe himself, hold objects, and pinch. He could bend over and touch his toes without problem, he could make a fist tightly, and he was able to raise his hand overhead and take it behind his back without any problem. The claimant had learned how to write, tie his shoe, and put his shoes and socks on with the left hand. He was still had a valid driver's license and was able to drive occasionally.

(R. 555). Claimant, however, testified that because he now had to rely on his left hand, he was

18

beginning to develop problems with that hand. (R. 579). Claimant testified that he drove a car once or twice a week (R. 570), but in the same hearing testified that he was scared to go places alone so he relies on his mother to drive him places. (R. 589). The record evidence does not support a finding that Claimant was having difficulty with his left hand or was limited in the use of his left upper extremity. The medical evidence reflects that Claimant has full range of motion of both his left elbow and shoulder. (R. 534).

With respect to the ALJ's statement that Claimant had mild depression that was controlled by medication, Claimant testified that his depression makes it difficult to be around people and makes it hard for him to concentrate. (R. 588). However, the record evidence shows that Claimant's depression was mild and was well-controlled by prescription medication. Claimant has a sporadic history of taking his prescription medicine, sometimes only taking it 25% of the time. (R. 441). After discontinuing his prescription in 2009 (R. 445), Claimant's depression worsened and he requested to be put back on the medication (R. 448). Dr. Bachara saw Claimant in 2011 for a comprehensive clinical psychological evaluation and mental status examination, when Claimant was taking his prescription. (R. 781, 786-88). After examining Claimant, Dr. Bachara noted that Claimant had a Global Assessment of Functioning (GAF) score of 65 (R. 788), which indicates some mild symptoms or "some difficulty in social, occupational or school functioning" but also that Claimant is "generally functioning pretty well, [and] has some meaningful interpersonal relationships." *Diagnostic & Statistical Manual of Mental Disorders*, 34 (4th ed. Text Rev. 2000) (DSM-IV-TR). Thus, the record evidence shows that Claimant did have some mild depression, but that it was greatly helped by medication when Claimant was properly taking his prescription.

Finally, the ALJ noted specifically as to credibility that Dr. Bachara evaluated Claimant on

19

two different occasions, and in 2011, Claimant "presented himself in a very unfavorable light" as compared to the first examination. (R. 555, 787). In his evaluation, Dr. Bachara stated that "[t]here were long delays when I asked him a question; it was almost as if it was orchestrated that he would have to think about even simple questions as to who he lived with, when he was married, when he had children, etc." (R. 786). Dr. Bachara also noted that Claimant was "not oriented to time, place, and person," such that Claimant misidentified the year and the day of the week, and that Dr. Bachara could not be sure as to whether Claimant was answering truthfully and believed Claimant to be malingering. (R. 787).

The ALJ's reasons for finding Claimant's testimony not credible and his analysis of factors where the medical evidence and Claimant's subjective complaints differed constitute an appropriate and complete consideration of Claimant's credibility, and demonstrates substantial evidence supporting the ALJ's determination that Claimant is not as functionally limited as he claims. The ALJ considered Claimant's hearing testimony, the objective medical evidence, and the medical opinions in formulating the RFC, and limited Claimant to light work with restricted use of the right upper extremity based on the Claimant's subjective complaints. Accordingly, the ALJ did not err in his credibility determination and the resulting RFC is supported by substantial evidence. Claimant's argument on this issue is without merit.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-28] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-31] be ALLOWED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the

20

respective parties, who have fourteen (14) days upon receipt to file written objections, response to which (if any) must be made within seven (7) days upon receipt of the written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 26th day of August 2014.

Robert B. Jones, Jr.
United States Magistrate Judge